FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2016 JUN -7  AM 11: 29

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

BRUCE SEALE,

      Plaintiff,

vs.

Case No.: 5:16-cv-379-Oc-41PRL

CHRIS BLAIR, in his official capacity
as Sheriff of Marion County, EMERY A.
GAINEY, in his official capacity as
Interim Sheriff of Marion County,
JESSE TERRELL, individually,
COLTON SULLIVAN,
Individually, and LAWRENCE MCARDLE,
Individually.

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and alleges:

### JURISDICTION

1.     This is action arises under the Fourth and Fourteenth Amendment to the United

States Constitution and federal statutes 42 U.S.C. §1983 and §1988.

2.     This is also an action for state law claims authorized by Congress to be brought in

a federal case under the Court's Supplemental Jurisdiction under 28 U.S.C. §1367(a).

### PARTIES

3.     The Plaintiff, BRUCE SEALE (Seale), is a resident of Marion County, Florida

and citizen of the United States of America.

4.     Defendant, CHRIS BLAIR ("Blair"), at all times material, was the elected sheriff

of Marion County, Florida.  On or about May 20, 2016, Blair was indicted by a Marion County

grand jury and charged with certain crimes by Marion County State Attorney, Bradley King. As a result of the indictment, Florida Governor Rick Scott suspended Blair as Sheriff of Marion County.

5.　　　Defendant, EMERY A. GAINEY ("Gainey"), at all times material, was the interim Sheriff of Marion County, Florida, appointed by the Governor of Florida, Rick Scott, to act as sheriff for Marion County during Blair's suspension and is, therefore, the acting sheriff and responsible for the actions of Blair, while Blair was acting as the elected sheriff of Marion County, Florida, and is a proper party to this action.

6.　　　Defendant, JESSE TERRELL ("Terrell"), at all times material, was a Marion County sheriff's deputy, acting within the course and scope of his employment for Blair, under color of law, and is sued in his individual capacity.

7.　　　Defendant, COLTON SULLIVAN ("Sullivan"), at all times material, was a Marion County sheriff's deputy, acting within the course and scope of his employment for Blair, under color of law, and is sued in his individual capacity.

8.　　　Defendant, LAWRENCE MCARDLE ("McArdle"), at all times material, was a Marion County sheriff's deputy, acting within the course and scope of his employment for Blair, under color of law, and is sued in his individual capacity.

## ALLEGATIONS COMMON TO ALL COUNTS

9.　　　Shortly after taking office, Blair fulfilled a campaign promise to create specialty law enforcement units, one of which was known as the Tactical Investigations Unit ("TIU").

10.　　The deputies assigned to the TIU were handpicked by Blair. Terrell was one such deputy Blair handpicked.

11.     Blair instructed Terrell, and other deputies of the TIU, to "kick ass and take names," permitted Terrell and TIU deputies to operate outside of the chain of command without internal operating manuals or directives, and assured Terrell and the other TIU deputies that any complaints would be "handled," because "we don't give a (expletive) about complaints."

12.     The primary function of the TIU was to investigate armed robberies, but when not involved in those investigations, Blair gave Terrell and the other TIU deputies the "green light" to "self-initiate" criminal investigations, again, all outside of the chain of command, with no internal operating manuals or directives, and with a license to be free from supervision or accountability for improper conduct.  In other words, Blair created the TIU as an "elite" and "special" force within the Sheriff's office, gave it "free rein" to operate   indiscriminately, without supervision or training, and exempted the TIU from the normal rules applicable to the sheriff's office, as a whole.

13.     Under Blair, Terrell and the other TIU deputies, developed longstanding, widespread, and deliberately indifferent customs, habits, practices, policies, training, and supervision that permitted Terrell and TIU deputies to use unnecessary and unjustified excessive force, falsify reports, write no reports at all, fabricate evidence, falsely arrest and gratuitously brutalize many citizens of Marion County and do so with near impunity.  In sum, Terrell and TIU deputies operated with a culture of violence and lawlessness, approved of and encouraged by Blair.

14.     While the responsibility for excessive force ultimately lies with the individual deputies, the responsibility for policies, training, and supervision ultimately lies with the sheriff, in this case, first Blair, then Gainey, his successor.  Blair and Gainey, at all times relevant, were the policymakers for the Marion County sheriff's office, and in that capacity established the

policies, procedures, customs, and/or practices of that office. With deliberate indifference to the rights of the citizens of Marion County to be free from excessive force and lawlessness, Blair and his office have encouraged, tolerated, ratified, and acquiesced to a dangerous environment of brutality.

15.   On August 16, 2013, Seale, a 62-year-old disabled resident of Marion County, became the next, in a long line, of victims when Terrell - whose primary duty was investigating "armed robberies" - "self-initiated" and responded to a commonplace "disturbance" call at Seale's residence. Terrell did not "self-initiate" and respond to the ordinary disturbance call alone; he responded with Major Crimes Detective McArdle, Sullivan, and Sullivan's German Shepherd, Pyro ("Pyro"), all of whom were supervised by Terrell.

16.   Pyro is trained in explosives detection, narcotics detection, article and building searches, human tracking, and apprehension of fleeing criminals—none of which were involved in the "disturbance" call to Seale's residence.

17.   On the evening of August 16, 2013 Seale and his roommate had a disagreement about charges on a cable bill. Seale's roommate ran up a $1,007.06 on Seale's Dish account. Seale asked his roommate to pay the bill. His roommate could not, and asked Seale to move out. Seale said he had fully paid the rent and suggested the roommate settle the outstanding cable bill and move out. A strictly verbal disagreement ensued. The roommate left the residence and called the Marion County sheriff's office.

18.   Approximately two hours after Seale's roommate had left the residence, Terrell, McArdle, Sullivan, and Pyro arrived at the residence. Seale was cooking dinner in the kitchen. Terrell, McArdle, Sullivan, and Pyro walked in through the open back door, passed through the laundry room, passed Seale's bedroom, turned a corner, passed through the dining room, and into

the kitchen, surprising Seale.  Terrell, McArdle, and Sullivan had their guns drawn on Seale when they entered the kitchen.

19.     Terrell told Seale he was under arrest, asked him to move away from the kitchen counter, and get down.  At that point, Seale partially turned around to inquire as to why the deputies were in his home and what he was being arrested for.  Seale was fully compliant with Terrell's requests.

20.     Before Seale could completely turn around, move away from the counter, and get down, Terrell ordered Sullivan to "put the dog on" Seale and Sullivan immediately did so.

21.     While fully in view of Terrell, McArdle and Sullivan, with no threat and no resistance, Terrell and Sullivan ordered and allowed Pyro to viciously attack and bite Seale multiple times from the back, indicating that Terrell and Sullivan did not even give Seale an opportunity to completely turn around before ordering the attack by Pyro.  See Exhibit "A" attached hereto.

22.     At the time Terrell ordered and Sullivan allowed Pyro to attack Seale, Pyro was on a leash and controlled by Sullivan.  Seale posed no threat and was fully compliant and this was known to both Terrell and Sullivan.

23.     The use of Pyro to punish Seale served no lawful purpose and was sadistic and gratuitous.

24.     Terrell, McArdle, and Sullivan could have prevented this violent and sadistic attack but failed to protect Seale from it, despite the ready and apparent means to do so.  Terrell, McArdle, and Sullivan could have stopped the attack, once initiated, but repeatedly ordered Pyro to attack Seale for what seemed like an eternity to Seale.

25.    After the attack, which shredded Seale's jeans and his flesh, Terrell, McArdle, and Sullivan mocked and chided Seale, while Seale was still bleeding from the bites inflicted by Pyro and laying in a pool of blood, which had collected on the kitchen floor, before finally calling an ambulance to take Seale to the hospital.

26.    After the attack, Terrell wrote up a report fabricating facts and suggesting that Seale was a threat with allegations of facts that were false in order to justify the attack on Seale, even though the physical evidence contradicted this account.    Terrell contradictorily charged Seale with resisting arrest "without violence."    Terrell knew that he could do so with impunity, because he could "kick ass and take names," all complaints would be "handled," there would be no internal investigation, TIU deputies had "free reign," and that he operated completely outside the chain of command, and that, in all events, his supervisors "don't give a [expletive] about complaints."

27.    At the time of the action, the law was clearly established that law enforcement cannot use force on a nonviolent offender who has completely surrendered and is compliant with lawful commands for the purpose of punishing the individual for fleeing or who has committed a crime

28.    At no time, did Seale take any action to threaten either physically or verbally Terrell, McArdle, or Sullivan and, all times material, the deputies were aware that Seale had not committed any serious felony and that he was completely compliant and had surrendered to their authority.

## COUNT I

42 U.S.C. §1983—Excessive Force in Violation of the Fourth and Fourteenth Amendments
(Claim Against Terrell, McArdle, and Sullivan)

29.     Seale restates the allegations of paragraphs 1 through 28 as if specifically set forth herein.

30.     At the time of this action, Seale had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

31.     At the time of this action, Seale also had a clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

32.     Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

33.     The actions of Terrell, McArdle, and Sullivan and their use of force were objectively unreasonable in light of the facts and circumstances known to them and violated the rights of Seale.

34.     The actions of Terrell, McArdle, and Sullivan were malicious and involved reckless, callous, and deliberate indifference to Seale's federally protected and constitutional rights.  The policies, customs, habits, training, and supervision, and use of force shocks the conscience and violated the constitutional and federally protected rights of Seale.

35.     The force used constituted deadly force in that it could have caused death and did cause Seale serious bodily injury.

36.     Neither Terrell, McArdle, nor Sullivan took reasonable steps to protect Seale from the objectively unreasonable and conscience-shocking excessive force of the other defendants despite being in a position to do so.  They are each therefore liable for the injuries and damages

resulting from the objectively unreasonable and conscience-shocking force of each of the other deputies.

37.     Neither Terrell, McArdle nor Sullivan is entitled to qualified immunity.

38.     Terrell, McArdle and Sullivan, at all times, were acting pursuant to the sheriff's custom, policy, decision, widespread habit, usage, or practice in their actions against Seale.

39.     Terrell, McArdle and Sullivan acted in concert and joint action with each other.

40.     As a direct and proximate result of the unlawful conduct of Terrell, McArdle and Sullivan, Seale suffered severe bodily injuries, disfigurement, emotional distress, pain, suffering, mental anguish, loss of enjoyment of life, partial loss of use of his leg, the cost of medical expense, hospitalization, and nursing care, and aggravation of pre-existing injuries and conditions.  These losses are permanent and will continue into the future.

41.     Seale is also entitled to punitive damages and seeks those damages on all claims as allowed by law.

42.     Seale has become obligated to retain an attorney and pursuant to 42 U.S.C. §1988 and seeks those fees and costs of suit.

WHEREFORE, Seale demands a judgment for damages, punitive damages, costs of suit, prejudgment interest, and attorney's fees.  Seale also demands trial by jury on all issues so triable.

## COUNT II

42 U.S.C. §1983—Deliberately Indifferent Policies, Practices, Customs, Training, and
Supervision in Violation of the Fourth and Fourteenth Amendments
(Against Blair and Gainey, in their Official Capacities)

43.     Seale restates the allegations of paragraphs 1 through 28, and 30 through 32 as if specifically set forth herein.

44.     Blair, and Gainey as his successor, developed and maintained policies, procedures, customs, and practices exhibiting deliberate indifference to the constitutional rights of Seale, which were moving forces and proximately caused the violations of Seale's constitutional rights.

45.     In light of the duties and responsibilities of TIU deputies that participate in arrests and preparation of police reports, the need for special training and supervision is so obvious, and the inadequacy of training and supervision is so likely to result in the violation of constitutional and federal rights such as those described herein, the failure to provide such training and supervision is deliberately indifferent to those rights.

46.     The deliberately indifferent training and supervision provided by Blair, as the Sheriff and adopted by Gainey as his successor, resulted from a conscious and deliberate choice to follow a course of action from among various alternatives available to the Marion County Sheriff's Office and were moving forces in the constitutional and federal violation injuries complained of by Seale.

47.     As a direct and proximate result, Seale suffered severe bodily injuries, disfigurement, emotional distress, pain, suffering, mental anguish, loss of enjoyment of life, partial loss of the use of his leg, the cost of medical expenses, hospitalization, and nursing care, and aggravation of pre-existing injuries and conditions. These losses are permanent and will continue into the future.

48.     Seale is also entitled to punitive damages and seeks those damages on all claims as allowed by law.

49.     Seale has become obligated to retain an attorney and pursuant to 42 U.S.C. §1988 seeks those fees and costs of suit.

WHEREFORE, Seale demands a judgment for damages, punitive damages, costs of suit, prejudgment interest, and attorney's fees.  Seale also demands trial by jury on all issues so triable.

## COUNT III

State Law—Battery
(Against All Defendants)

50.    The Plaintiff restates the allegations of paragraphs 1 through 28 as if specifically restated herein.

51.    Terrell, McArdle, and Sullivan, at all times material, were acting within the scope and course of their employment with Blair and Gainey, the Sheriff of Marion County. Accordingly, Blair and Gainey are liable for the actions of Terrell, McArdle, and Sullivan under the doctrine of respondeat superior.

52.    Terrell, McArdle, and Sullivan did cause the battery of Seale by Pyro.

53.    Seale has performed all conditions precedent to this action, or those conditions have been waived or excused.  See Exhibit "B" attached hereto.

54.    As a direct and proximate result, Seale has suffered severe bodily injuries, disfigurement, emotional distress, pain, suffering, mental anguish, loss of enjoyment of life, partial loss of the use of his leg, the cost of medical expenses, hospitalization, and nursing care, and aggravation of pre-existing injuries and conditions.  These losses are permanent and will continue into the future.

WHEREFORE, Seale demands a judgment for damages, punitive damages, costs of suit, prejudgment interest, and any other relief the court deems proper.  Seale also demands trial by jury on all issues so triable.

## COUNT IV

State Law Dog Bite/Injury Statute Claim—F.S. §767.01/04
(Against Blair and Gainey)

55.     The allegations of paragraphs 1 through 28 are restated herein.

56.     Blair and Gainey, as Sheriff and Interim Sheriff of Marion County, respectively, are the owners of Pyro.

57.     Pyro is a German Shepherd dog.

58.     F.S. 767.01 provides that owners of dogs shall be liable for any damage done by their dogs to a person.

59.     F.S. 767.04 provides that the owner of any dog that bites any person while such person is lawfully in a private place is liable for damages suffered by the persons bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.

60.     All conditions precedent to this action have been performed or have been waived or excused.  See Exhibit "B" attached hereto.

61.     As a direct and proximate result of the dog bite and attack, Seale suffered severe bodily injuries, disfigurement, emotional distress, pain, suffering, mental anguish, loss of enjoyment of life, partial loss of use of his leg, the cost of medical expenses, hospitalization, and nursing care, and aggravation of pre-existing injuries and conditions.  These losses are permanent and will continue into the future.

WHEREFORE, Seale demands a judgment for damages, punitive damages, costs of suit, prejudgment interest, and any other relief the court deems proper.  Seale also demands trial by jury on all issues so triable.

Respectfully Submitted,


/s/ Michael V. Laurato

MICHAEL V. LAURATO, ESQUIRE
Florida Bar No. 181447
AUSTIN & LAURATO, P.A.
1902 W. Cass Street
Tampa, Florida 33606
(813) 258-0624 Telephone
(813) 258-4625 Facsmile
mlaurato@austinlaurato.com
TRIAL COUNSEL
Attorneys for Plaintiff



PLAINTIFF'S
EXHIBIT
A







January 4, 2016

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Division of Risk Management
Florida Department of Financial Services
200 East Gaines St.
Tallahassee, FL 32399

**NOTICE OF CLAIM**

RE:   Claimant:              Bruce Seale
      Date of Birth:          7/4/1950
      Social Security #:      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
      Date of Occurrence:    8/16/2013

Dear Sir/Madam:

　　PLEASE TAKE NOTICE THAT pursuant to F.S. 768.28, the laws of the state of Florida, and the Constitution of the United States, the above-referenced claimant hereby makes demand for compensation for injuries resulting from an attack by a police dog in Marion County, Florida. On August 16, 2013, Deputy Colton Sullivan, Lawrence McCradle, and Jesse Terrell ordered a police dog under their control to attack Mr. Seale. Mr. Seale was bitten various times and viciously attacked by the police dog, suffering severe injuries. The deputies ordered the police dog to gratuitously bite and attack Mr. Seale and failed to halt or prevent the police dog attack. Mr. Seale was taken to West Marion Community Hospital for emergency medical care. For your review, I have attached photos of some of the injuries suffered by Mr. Seale as a result of the ferocious, violent, and brutal dog attack needlessly ordered by the deputies, in the first instance, and which they failed to cut short, after unlawfully unleashing the pointless initial assault.

　　As a direct and proximate result of the deputies' conduct, Mr. Seale suffered bodily injuries and resulting pain and suffering, disability, disfiguration, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and

1



treatment, and aggravation of pre-existing conditions. These losses are either permanent in nature or continuing and the claimant will suffer the losses in the future.

Pursuant to F.S. 768.28, there exist no prior unpaid claims owed to the state in any amount. Please do not hesitate to contact me with any questions you may have.

Sincerely,

AUSTIN & LAURATO, P.A.

Michael V. Laurato, Esquire
Christopher A. Tumminia, Esquire

MVL/ct
Enclosures

2



January 4, 2016

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Division of Risk Management
Florida Department of Financial Services
200 East Gaines St.
Tallahassee, FL 32399

## NOTICE OF CLAIM

RE:   Claimant:              Bruce Seale
      Date of Birth:         7/4/1950
      Social Security #:     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
      Date of Occurrence:    8/16/2013

Dear Sir/Madam:

     PLEASE TAKE NOTICE THAT pursuant to F.S. 768.28, the laws of the state of Florida, and the Constitution of the United States, the above-referenced claimant hereby makes demand for compensation for injuries resulting from an attack by a police dog in Marion County, Florida. On August 16, 2013, Deputy Colton Sullivan, Lawrence McCradle, and Jesse Terrell ordered a police dog under their control to attack Mr. Seale. Mr. Seale was bitten various times and viciously attacked by the police dog, suffering severe injuries. The deputies ordered the police dog to gratuitously bite and attack Mr. Seale and failed to halt or prevent the police dog attack. Mr. Seale was taken to West Marion Community Hospital for emergency medical care. For your review, I have attached photos of some of the injuries suffered by Mr. Seale as a result of the ferocious, violent, and brutal dog attack needlessly ordered by the deputies, in the first instance, and which they failed to cut short, after unlawfully unleashing the pointless initial assault.

     As a direct and proximate result of the deputies' conduct, Mr. Seale suffered bodily injuries and resulting pain and suffering, disability, disfiguration, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and

1

January 4, 2016

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Marion County Sheriff's Office
Central Operations Center
692 NW 30th Ave.
Ocala, Florida 34475

**NOTICE OF CLAIM**

RE:    Claimant:         Bruce Seale
         Date of Birth:      7/4/1950
         Social Security #:   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
         Date of Occurrence:  8/16/2013

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT pursuant to F.S. 768.28, the laws of the state of Florida, and the Constitution of the United States, the above-referenced claimant hereby makes demand for compensation for injuries resulting from an attack by a police dog in Marion County, Florida. On August 16, 2013, Deputy Colton Sullivan, Lawrence McCradle, and Jesse Terrell ordered a police dog under their control to attack Mr. Seale. Mr. Seale was bitten various times and viciously attacked by the police dog, suffering severe injuries. The deputies ordered the police dog to gratuitously bite and attack Mr. Seale and failed to halt or prevent the police dog attack. Mr. Seale was taken to West Marion Community Hospital for emergency medical care. For your review, I have attached photos of some of the injuries suffered by Mr. Seale as a result of the ferocious, violent, and brutal dog attack needlessly ordered by the deputies, in the first instance, and which they failed to cut short, after unlawfully unleashing the pointless initial assault.

As a direct and proximate result of the deputies' conduct, Mr. Seale suffered bodily injuries and resulting pain and suffering, disability, disfiguration, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and

1

treatment, and aggravation of pre-existing conditions. These losses are either permanent in nature or continuing and the claimant will suffer the losses in the future.

Pursuant to F.S. 768.28, there exist no prior unpaid claims owed to the state in any amount. Please do not hesitate to contact me with any questions you may have.

Sincerely,

AUSTIN & LAURATO, P.A.


Michael V. Laurato, Esquire
Christopher A. Tumminia, Esquire

MVL/ct
Enclosures

2



CERTIFIED MAIL RETURN RECEIPT REQUESTED
Marion County Sheriff's Office
Central Operations Center
692 NW 30th Ave.
Ocala, Florida 34475

## NOTICE OF CLAIM

RE:    Claimant:        Bruce Seale
          Date of Birth:     7/4/1950
          Social Security #:  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
          Date of Occurrence:  8/16/2013

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT pursuant to F.S. 768.28, the laws of the state of Florida, and the Constitution of the United States, the above-referenced claimant hereby makes demand for compensation for injuries resulting from an attack by a police dog in Marion County, Florida. On August 16, 2013, Deputy Colton Sullivan, Lawrence McCradle, and Jesse Terrell ordered a police dog under their control to attack Mr. Seale. Mr. Seale was bitten various times and viciously attacked by the police dog, suffering severe injuries. The deputies ordered the police dog to gratuitously bite and attack Mr. Seale and failed to halt or prevent the police dog attack. Mr. Seale was taken to West Marion Community Hospital for emergency medical care. For your review, I have attached photos of some of the injuries suffered by Mr. Seale as a result of the ferocious, violent, and brutal dog attack needlessly ordered by the deputies, in the first instance, and which they failed to cut short, after unlawfully unleashing the pointless initial assault.

As a direct and proximate result of the deputies' conduct, Mr. Seale suffered bodily injuries and resulting pain and suffering, disability, disfiguration, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and

1

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☐ Agent  ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery  1/11/16 |
| 1. Article Addressed to:<br><br>Marion County Sheriff's Office<br>Central operations Center<br>692 NW 30th Ave<br>Ocala, FL 34475 | D. Is delivery address different from item 1?  ☐ Yes<br>   If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☑ Certified Mail      ☐ Express Mail<br>☐ Registered         ☐ Return Receipt for Merchandise<br>☐ Insured Mail       ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*        ☐ Yes |

| 2. Article Number<br>*(Transfer from service label)* | 7015 0640 0006 8936 8227 |
|---|---|

PS Form 3811, February 2004         Domestic Return Receipt   Seale, Bruce        102595-02-M-1540